ORIGINAL

**U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FILED**
**SEP 25 2006**
CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL COMPLAINT |
| v. | § | |
| | § | No. 4:06-222-MJ |
| | § | |
| TERRY DEE HENSLEY | § | |

### CRIMINAL COMPLAINT

The undersigned Complainant, being duly sworn, states the following is true and correct to the best of his knowledge and belief:

On or about the 6th day of January, 2003, in the Fort Worth Division of the Northern District of Texas, the defendant, TERRY DEE HENSLEY, wilfully and knowingly did receive, conceal and retain stolen property of the United States, that is, one PAQ-4C infrared laser sight which bear the partial serial number of "0877", of a value in excess of $1000.00, with intent to convert said property to his own use, TERRY DEE HENSLEY then knowing said property to have been stolen,
in violation of 18 U.S.C. 641.

Complainant, Special Agent ALLEN L. STIDGER, hereafter SA Stidger, having first been duly sworn, do hereby state and depose as follows:

### INTRODUCTION

1. SA Stidger has been a Special Agent of the Federal Bureau of Investigation (FBI) for approximately twenty-two (22) years and during that time has participated in and conducted numerous investigations. For the past three years SA Stidger has been assigned to the FBI Joint Terrorism Task Force (JTTF) in the Fort Worth Resident Agency office of the Dallas Division of the FBI.

### CRIMES ALLEGED

2. Complainant is familiar with all aspects of the investigation described herein,

**Criminal Complaint - Page 1**

which is the result of interviews of witnesses, review of financial records, analysis of information provided by internet auction sites, FEDEX shipment records, interviews of Subjects TERRY DEE HENSLEY and JOE SIZEMORE, and examination of the files of numerous investigations conducted in the past by the FBI, DCIS, Food and Drug Administration (FDA), Department of Energy (DOE), and Army Criminal Investigation Command (CID). As a result of the investigation described herein, Complainant alleges that the following facts and circumstances establish probable cause that TERRY DEE HENSLEY, hereafter referred to as HENSLEY, by receiving, retaining with intent to sell, and by selling property of the United States government, knowing the same to have been stolen, committed the violations listed in paragraphs 22 B-D of this affidavit, in violation of Title 18, United States Code, Section 641, which states:

> "Whoever...steals...or knowingly converts to his use or the use of another, or without authority, sells...anything of value of the United States or any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or Whoever receives ...., or retains the same with intent to convert it to his use or gain, knowing it to have been ...stolen...shall be fined...or imprisoned not more than ten years...."

## BACKGROUND ON TERRY DEE HENSLEY

3. This investigation was opened in the spring of 2005 after the FBI received a complaint that a person, identified as TERRY DEE HENSLEY, a resident of Fort Worth, Texas, who owned and operated a business known as TERRY'S OCEAN CONTAINERS, was using the sreen name "OCEANCONTAINER" to displayed photographs of an M-190 Light Anti-tank Weapon (LAW) Sub Caliber Rocket Launcher on the internet.

## DCIS INVESTIGATION

4. During 2002, the Defense Criminal Investigative Service (DCIS) investigated HENSLEY for the sale of military property, specifically two AN/PAQ-4C Infrared Laser Aimers. The AN/PAQ-4C Infrared Laser Aimer, also known as a "PAQ-4," and the VITAL 100 and VITAL 2 lasers, are powerful military grade lasers designed to be mounted on a military issue M-16 or M-4 assault rifle. Due to the power and dangerousness of these devices they are regulated by the Food and Drug Administration (FDA). Due to the advanced state of the technology in these devices, they are prohibited for export without Department of State license and not available for sale into the civilian market. (See paragraphs 12 to 17 below.)

**Criminal Complaint - Page 2**

5. During an interview with HENSLEY by DCIS Special Agent Joe McCardel on 12/02/2002, HENSLEY provided information to the DCIS regarding two individuals which HENSLEY claimed to be involved in selling stolen military property. HENSLEY said that one person was the owner and operator of a business in Fort Worth, Texas, that was used to sell stolen military property. HENSLEY told McCardel that he had obtained two AN/PAQ-4C Infrared laser aimers from a Department of Energy (DOE) employee named JOE SIZEMORE, and that the lasers had the first four serial numbers of "0877," but the remaining numbers had been "scratched off." (During November of 2002, HENSLEY had advertised an AN/PAQ-4C laser aimer for sale on the website www.gunsamerica.com.) HENSLEY told SA McCardel that he (HENSLEY) had already sold the two AN/PAQ-4C laser aimers that he had bought from JOE SIZEMORE, and that he (HENSLEY) did not remember to whom he had sold the lasers. Complainants believe that this was a deliberate false statement by HENSLEY. Knowing that McCardel was seeking to recover the lasers, HENSLEY falsely claimed to have already sold them, when in fact, HENSLEY subsequently sold these two lasers bearing the partial serial numbers "0877" to Eugene Lian, who subsequently surrendered them to the FBI. (See paragraph 22 A below.)

6. On January 24, 2003, DCIS SA McCardel again contacted HENSLEY. When questioned about the purchase from SIZEMORE of the two AN/PAQ-4C laser aimers, HENSLEY produced a copy of a bank check dated "November 12, 2002," payable to "JOE SIZEMORE" in the amount of "$6225.00," in order to prove that he had a legitimate source for the lasers. In this meeting, McCardel advised HENSLEY that the military night vision and lasers HENSLEY had sold were likely stolen U.S. Government property. On May 15, 2003, SA McCardel again contacted HENSLEY and reminded him that the military lasers and night vision equipment that HENSLEY had been selling were likely to be stolen U.S. Government property. HENSLEY specifically stated to SA McCardel that he did not "sell hot stuff," meaning stolen property and claimed that he had a legitimate source for the property he was selling. Complainant believes that this was also a deliberate false statement by HENSLEY. At the time HENSLEY made this statement to SA McCardel, HENSLEY was in the process of selling a VITAL 100 laser, that HENSLEY knew to be stolen, to an undercover FDA agent. Two days earlier, on May 13, 2003, when the FDA undercover agent requested a face-to-face meeting, HENSLEY responded with an e-mail stating: "Sorry, I do not do face to face transactions with regulated items." On May 16, 2006. the day after making the false statement to SA McCardel, HENSLEY shipped the stolen VITAL 100 laser to the FDA undercover agent. (See paragraphs 7A to 7D below.)

**Criminal Complaint - Page 3**

### FOOD AND DRUG ADMINISTRATION (FDA) INVESTIGATION

7. SA Stidger and Defense Criminal Investigative Service (DCIS), Special Agent JODY B. FLETCHER, have met with and spoken on numerous occasions with SA William Brannon of the FDA Office of Criminal Investigations (FDA-OCI) in Austin, Texas. SA Brannon has provided the following information about an investigation that he previously conducted on TERRY HENSLEY:

A. The FDA has regulatory and investigative oversight of laser devices under the Federal Performance Standard for Laser Products as delineated in the U.S. Code of Federal Regulations. In May of 2003, Brannon received information from an Army investigator that a person named "Terry" was attempting to sell VITAL (Variable Intensity Tactical Aiming Light) 2 Infrared Laser Aimers on website named www.sturmgewehr.com. Brannon said that the same devices had also been advertised on the auction site www.ebay.com. On the website www.sturmgewehr.com the VITAL 2 was posted by "Terry" on 4/27/03 for a cost of $2,499.95 and the email address associated with this listing was oceancontainer@direcway.com. (This is known to me to be an email address of HENSLEY.) On the eBay website the seller was listed as "AbidingFarms" in Fort Worth, Texas. ("Abiding Farms" again is known to me to be a known screen name of HENSLEY.)

B. On May 5, 2003, SA Brannon, acting in an undercover capacity, caused a message to be sent to HENSLEY's eBay posting. SA Brannon received a reply on May 6, 2003, from "Terry's Ocean Containers" advising SA Brannon to send money to "TERRY HENSLEY at Box 151142, Fort Worth, TX. 76108." During subsequent e-mail communications between HENSLEY and the FDA undercover agent, HENSLEY directed payment to be made using a postal money order. When the FDA undercover agent requested a face-to-face meeting with HENSLEY, HENSLEY responded in an e-mail on May 13, 2003, "Sorry, I do not do face to face transactions with regulated items." On May 15, 2003, the FDA undercover agent sent HENSLEY four (4) postal money orders totaling $2530.00, the purchase price of the laser. Thereafter, the FDA agent received the laser via Federal Express (FEDEX). A review of records obtained from FEDEX by Complainant and SA Fletcher revealed that on 5/16/2003, "T HENSLEY" shipped the package containing the stolen VITAL 100 laser to the FDA undercover agent. The package's originating address was "2001 W. Loop 820 N, Fort Worth, TX 76108." (Complainant knows this address was owned by ROBERT HENSLEY, the father of TERRY HENSLEY.)

C. Subsequent to the undercover purchase of the VITAL military laser (which turned out to be a VITAL 100, rather than a VITAL 2), it was determined by examination of military procurement records that the laser was one of three VITAL 100 lasers which had been ordered by the U.S. Army First Cavalry Division at Fort Hood, Texas, which

**Criminal Complaint - Page 4**

was preparing for deployment to Iraq. However, the records reflect that all three of the VITAL 100 military lasers had been stolen from the base within days of their arrival, before they had ever reached the First Cavalry.

D. As part of the FDA investigation, SA Brannon contacted the manufacturer of the VITAL 2 and VITAL 100 LASERS, Night Vision Equipment Company, and learned that a representative of Night Vision Equipment had seen a posting on the internet auction site www.eBay.com for an "AN/PAQ-4C, manufactured by Insight Technologies Incorporated." The Night Vision representative knew that the Insight Technologies AN/PAQ-4C laser was a regulated item that should not be sold to the public. When the employee inquired about the item, the employee received an e-mail from "TERRY'S OCEAN CONTAINERS" (HENSLEY's business name) using the e-mail address oceancontainer@direcway.com (HENSLEY's email address). The reply stated the following:

> "Mike, unless your in the military or armed forces the only way you'll get a new PAQ-4C from Insight today is to buy one of the ones I sold a few years back or buy a liberated/stolen one off a military base....."

## DEPARTMENT OF ENERGY (DOE) INVESTIGATION

8. Complainant and SA Fletcher have met with and spoken on numerous occasions with SA Brandon Currie, DOE Office of the Inspector General regarding SIZEMORE's sale of DOE laser aimers to HENSLEY. As a result, SA Currie of DOE joined this investigation. SA Currie stated that DOE records show that SIZEMORE was employed at the DOE Pantex facility as a member of the Office of Secure Transportation (OST), whose function is to protect and transport nuclear material and weapons. SA Currie stated that DOE did have AN/PAQ-4C Infrared laser aimers in the agency's inventory and that SIZEMORE, as a member of the DOE OST, would have access to that equipment.

9. SA Currie's inquiries within DOE determined there was no individual accountability for the AN/PAQ-4Cs issued to DOE OST personnel, and that currently, the agency can not account for over one hundred (100) of these units. SA Currie's DOE procurement inquiries, as well as SA Fletcher's review of an Army CID investigative report detailing the recovery of a DOE AN/PAQ-4C, revealed that on July 18, 2001, DOE had purchased 200 AN/PAQ-4Cs under a U.S. Army contract. This procurement included ninety (90) of the one hundred (100) AN/PAQ-4Cs which bore serial numbers beginning with "0877." SA Currie has determined that DOE can not account for the whereabouts of twenty-five (25) of the AN/PAQ-4Cs bearing serial numbers beginning with "0877." On August 30, 2001, on another U.S. Army contract, six (6) AN/PAQ-4Cs bearing serial numbers with the first four numbers "0877" were shipped to the DOE.

**Criminal Complaint - Page 5**

Therefore, ninety-six (96) of the one hundred (100) Insight Technologies AN/PAQ-4Cs bearing serial numbers beginning with "0877" were sold to the DOE. Of the remaining four, one was retained by Insight Technologies, one went to a foreign purchaser, and two went to a U.S. military contractor.

10. On September 6, 2006, a Federal Grand Jury in Amarillo, Texas returned an indictment against JOE SIZEMORE, which included twenty-six (26) counts of Theft of Government Property (TGP). Count nine (9) of the indictment (a TGP count) relates to the sale of the two AN/PAQ-4C lasers which SIZEMORE sold to subject HENSLEY in November of 2002. (See paragraphs 6 and 7 above.)

## RECORDS FROM INTERNET AUCTION SITES

11. Records Complainant obtained from the websites eBay.com, GunsAmerica.com, and GunBroker.com, pertaining to purchases and sales by "TERRY" show that HENSLEY advertised numerous military lasers, night vision devices, and LAW training rockets for sale on these auction websites. Itmes offered for sale include: AN/PAC-4C Infrared lasers aimers, AN/PEQ-2 Infrared lasers aimers, AN/PVS-7 night vision goggles, PVS-4 night vision scopes, AN/PVS-5 night vision goggles, PVS-14 night vision monoculars, VITAL 2 laser aimers, and M-190 LAW Sub-caliber launchers with live training rockets, as well as numerous other items of military equipment. Between August of 1999 and April of 2005, HENSLEY posted for sale on the various websites in excess of one hundred (100) of the above described items of military equipment.

## DOD DEMIL PROCEDURES

12. SA Fletcher believes that all of the lasers and night vision devices sold by HENSLEY on the above internet auction websites constitute the sale of a prohibited intact military item into the civilian market. In addition, since these items are prohibited for sale to the civilian market, it is likely that at some point all of these items were stolen from the military. This conclusion is based on SA Fletcher's knowledge of the following:

13. The Department of Defense (DOD) re-utilizes excess property through various DOD programs and the Defense Logistics Agency (DLA) manages excess property for the DOD. The DLA, through the Defense Re-utilization Marketing Service (DRMS), and with Defense Re-utilization Marketing Offices (DRMOs) located across the country and in overseas locations, receives excess property from all sources within the DOD. Military units and other DOD entities that no longer need certain equipment turn in the excess property to the DRMOs. The DRMO can reissue the property to other DOD activities, transfer the property to Federal agencies, donate the property to authorized recipients, sell certain property to the public or destroy the property. The determination of this re-utilization is based in part on the demilitarization code of the property. The demilitarization (demil) code is a code given by DOD to property to determine the status

of property before it can be relinquished from the DOD. The demil code is an alphabetic letter and designates the process needed to relinquish the property from DOD control.

14. The AN/PAQ-4C infrared laser aiming sight possessed the National Stock Number (NSN) 5855-01-398-4315 and the demil code F. Demil code F states "Demilitarization instructions to be furnished by Item Manager." The instructions for demilitarization from the Item Manager read that "Items should be destroyed by taking out the optical baffle, use a Phillips head screwdriver to break the Light Emitting Diode (LED), and crush the aiming lights prior to disposal." Additionally, the instructions read that "The DRMO shall not issue item(s) to anyone, including DOD or Law Enforcement Agencies."

15. On September 28, 2005, SA Fletcher telephonically contacted Tom Grover, Product Manager, Sensors and Lasers, Fort Belvoir, VA, who confirmed that the demil code F was still a valid demil code for the aforementioned items. Grover advised the AN/PAQ-4C was not legally available to the general public. The unit cost for the AN/PAQ-4C was listed as $518.00.

16. The VITAL 2, NSN 5855-01-468-4169, and the VITAL 100, NSN, 5855-01-468-4188, laser aiming sights both possessed demil code C. Demil C states "Remove and/or demilitarize installed key point(s) as prescribed in Defense Demilitarization Manual (DOD 4160.21-M-1), or lethal parts, components, and accessories."

17. On September 28, 2005, SA Fletcher telephonically contacted Edward Fosnaught, Quality Technician Supervisor, Aviation Detachment, Defense Supply Center, Columbus, Ohio, who confirmed that demil code C was a valid demil code for the VITAL 2 and VITAL 100. Fosnaught advised that his unit managed the VITAL 2 and VITAL 100 lasers. According to Fosnaught, removing and/or destroying the key points of the VITAL 2 and VITAL 100 lasers would make the devices non-functional. In Fosnaught's opinion, in order to remove or destroy the key point infrared capabilities of the lasers, that the process would likely destroy the laser itself. Fosnaught added that VITAL 2 and VITAL 100 laser aiming sights were not legally available to the general public.

## SEARCH OF HENSLEY'S RESIDENCE

18. On October 10, 2005, United States Magistrate Judge Charles Bleil issued a Search Warrant for the residence of TERRY HENSLEY at 2001 West Loop 820, North, Fort Worth, Texas. The Search Warrant was executed by Complainants on October 11, 2005. The search resulted in the seizure of numerous documents and computerized evidence, as well as several items of stolen military equipment.

## CONFESSION OF HENSLEY

19. On November 15, 2005, TERRY HENSLEY appeared at the Fort Worth FBI office with legal counsel and submitted to an interview conducted by Complainant and

SA Fletcher. Initially HENSLEY contended that "most of the property" he sold was legal; however, HENSLEY eventually admitted that any of the property that he got from the persons referenced in paragraph 6 above was stolen from the U.S. Army at Fort Hood, Texas. HENSLEY stated that the two people who supplied him with stolen military equipment, specifically lasers and night vision equipment, both obtained the items from a family called the SPRIGGS, of which several members of that family have previously been convicted of selling stolen military equipment. HENSLEY advised that the SPRIGGS family maintained a warehouse in Kileen, Texas, near Fort Hood, Texas, where they kept the stolen military equipment and that HENSLEY had gone to that warehouse on two separate occasions, once with each of the two people that supplied him with stolen military equipment. HENSLEY specifically stated "I knew I was dealing in stolen military property."

20. In this conspiracy to sell stolen military equipment, HENSLEY described himself as the "internet man," while one of the conspirators was the "money man." HENSLEY explained that his supplier, who had a business that sells military related equipment (see paragraph 6 above), would get the property from the SPRIGGS family and that HENSLEY would then post the items for sale on the internet. When a sale was made, if the purchaser paid with a credit card, it would be paid through the supplier's business. The supplier would "drop ship" the item directly to the buyer. If the buyer wanted to pay with other than a credit card, the buyer would be required to send a postal money order. HENSLEY cashed some of the money orders and others were placed in his suppliers business account. Typically HENSLEY and his supplier would split the profit on the sale of the stolen military property "50/50."

21. HENSLEY admitted that all of the PAQ-4C, VITAL 100, and VITAL 2 lasers that he sold were stolen; including the VITAL 100 he sold to the FDA Undercover agent. (See paragraphs 6 and 7 above.)

## RECOVERY OF STOLEN PROPERTY

22. Subsequent to the search of HENSLEY's residence and his confession as described above, Complainant sent leads to multiple FBI offices to attempt to recover stolen military property sold by HENSLEY. As a result, numerous items believed to be stolen military property sold by HENSLEY over the internet were recovered, including the following:

A. On 1/06/2003 and 4/04/2003, Eugene Lian received FEDEX shipments from HENSLEY which were delivered to 24599 Stewart, Loma Linda, CA. Lian was located by the FBI in Anchorage, Alaska and surrendered two PAQ-4C lasers which bear the partial serial number of "0877." Complainant believes these two lasers to be the two PAQ-4C lasers which HENSLEY bought from JOE SIZEMORE. (See paragraph 6 above.) When interviewed by the FBI in Anchorage, Lian said that

**Criminal Complaint - Page 8**

HENSLEY told him that the lasers had been purchased from a "friend at the Department of Energy". Lian telephonically advised Complainant that he bought the two lasers from HENSLEY at two separate times, paying for both with Cashier's checks, the first being 1/02/03 and the second 4/03/03. As Lian received FEDEX shipments from HENSLEY on 1/06/2003 and 4/04/2003, the sale of first of these two lasers (1/06/2003), would have occurred after DCIS SA McCardel contacted HENSLEY on 12/02/2002 in an attempt to recover the lasers. The sale of the second laser (4/04/03) would have occurred after SA McCardel contacted HENSLEY a second time on 1/24/03, during which SA McCardel specifically advised HENSLEY that the military night vision and lasers HENSLEY had sold were likely stolen U.S. Government property. On 5/15/03, SA Joseph McCardel again contacted HENSLEY and reiterated to HENSLEY that the military lasers and night vision equipment that HENSLEY had been selling was likely to be stolen U.S. Government property, to which HENSLEY falsely claimed that he did not "sell hot stuff," meaning stolen property, and claimed that he had a legitimate source for the property he was selling. (See paragraph 6 above.)

B. The VITAL 100 laser sold by HENSLEY on May 16, 2003, was determined to have been one of three units sent by the manufacturer to the Defense Supply System, which in turn shipped it to the U.S. Army's First Cavalry Division at Fort Hood, Texas on 4/21/2003. (See paragraphs 7A to D above.) The U.S. Army's First Cavalry Division had ordered this laser while preparing for deployment to the Iraq War and paid the Defense Supply System $1,956.03.

## CONCLUSION

23. Based upon the above facts and circumstances, Complainant believes that TERRY DEE HENSLEY has committed the crimes listed in paragraph three above (in violation of Title 18, United States Code, Section 641.) and four above (in violation of Title 18, United States Code, Section 1001), specifically by committing the following acts:

Sale of a stolen AN/PAQ-4C laser to Eugene Lian on or about January 6, 2003, for a cost of $3,439.95. (See paragraphs 6, 7 and 22A above.)

Further, Complainants sayeth not.

ALLEN L. STIDGER, Special Agent
Federal Bureau of Investigation

Sworn and subscribed to me this 25 day of September, 2005

CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE

**Criminal Complaint - Page 10**